# FLOYD *v.* ROHLFING.

---

PATENTS; INTERFERENCE; DILIGENCE.

Where the junior party to an interference involving the invention of a simple device had made complete drawings of his invention ten months before the senior party entered the field, and fourteen months before the latter filed his application, and is shown to have deliberately de-

layed the preparation and filing of his application, and his activity, began only after his rival entered the field, he will be held to have been so lacking in diligence as not to be entitled to an award of priority. (Following *Seeberger* v. *Dodge*, 24 App. D. C. 476.)

No. 603. Patent Appeals. Submitted November 19, 1909. Decided December 7, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. C. C. Linthicum, Mr: W. O. Belt, Mr. W. M. Fuller, Mr. L. S. Bacon,* and *Mr. J. H. Milans* for the appellant.

*Mr. Walter A. Scott* and *Mr. George L. Wilkinson* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an interference case appealed from the decision of the Commissioner of Patents awarding priority to appellee, John M. Rohlfing, for an invention relating to railway car trucks. The single count of the issue is as follows:

"A railway truck comprising side frames and journal boxes, —the latter being divided and cast partly with said frames and part separately,—and means to secure said divided boxes in matching position to said frames."

The appellant, George G. Floyd, filed his application in the Patent Office April 26, 1907. Appellee filed his application March 6, 1907, upon which a patent was granted to him June 11, 1907. Since appellant's application was pending at the time the patent was granted, no additional burden is cast upon him for this reason. Appellant claims conception of the invention in issue December 23, 1905, disclosure January 8, 1906, and that he made drawings of the device January 18, 1906. Appellee claims conception June 15, 1905, disclosure June 1,

1906, and that he made drawings showing his invention October 1, 1906. It will be readily observed from a comparison of these dates that, if no question of diligence entered into the case, it would turn upon the truth of appellee's claim to prior conception. Appellant is the junior party, and with the burden resting upon him, before he can assail appellee's alleged date of conception, he must appear with clean hands on the question of diligence. This, we think, he has not done. On this point the case must turn.

For the purposes of this inquiry we will accept the contention of counsel for appellant at bar that appellee did not enter the field by the disclosure of his invention until November, 1906 (though we think the evidence establishes a much earlier date). The evidence shows that appellant conceived and disclosed his invention in January, 1906, to certain officers of the American Steel Foundries, for which both appellant and appellee were working at this time. Working drawings were made by appellant in the early part of January, 1906, and shortly thereafter he made perspective views of the invention, as shown by exhibits in the record. It was found by the tribunals of the Patent Office that these exhibits clearly disclose the issue of the interference. Thus we find appellant with complete drawings of his invention ten months before he concedes appellee entered the field, and fourteen months before appellee filed his application. This long period of time between the completion of his drawings and the filing of his application, in a device so simple as the one in issue, must be accounted for.

It appears that, after the preparation of the drawings in January, 1906, nothing was done by appellant until, on September 30, following, he presented the drawings, or part of them, to his attorney, who testified that "at that time I fully understood this invention, because Mr. Floyd is unusually lucid in his explanation." Appellant refused to permit his attorney to proceed with the preparation of an application for patent, but promised to furnish further drawings. On October 18, 1906, his attorney, not having heard from him, wrote to him, calling his attention to his promise to send further illustrations. On October

19th, he replied in part as follows: "We have not forgotten this matter, but our drawing room is so crowded with current work that we have not as yet been able to get it. The work is about half completed, and we will make an effort to get it to you some time the first of next week, and it might be well for you to hold up the matter until we can get you these prints." Presumably, this letter refers to some additional prints other than those prepared the previous January. The prints, however, were not sent to his attorney until December 27, 1906, after, it is conceded, appellee had come into the field. The attorney then turned the matter over to his draftsman to prepare application drawings. On January 31, 1907, appellant had a conference with his attorney, as a result of which he furnished some additional drawings.

From this time on there seems to have been considerable activity on the part of appellant, the reason for which is apparent. On January 12, 1907, appellee employed one Plaisted, a draftsman of the American Steel Foundries, to make drawings and apply for a patent for the invention in issue. This was done, and the application was filed on January 27, 1907. It will be observed that it was just four days later that appellant had his last conference with his attorney. Shortly after this, Plaisted, who was working under appellant, pursuaded appellee to abandon the application already filed and file another involving the same subject-matter, omitting Plaisted's name as attorney, which was done on March 6, 1907, and which is the one here in issue.

It appears that before appellee filed his second application, he took a drawing to appellant for the purpose of having him negotiate with the American Steel Foundries for the sale of the invention, should a patent subsequently be granted. At this interview, appellant criticized appellee for filing an application for a patent in his own name, without first consulting the officers of the American Steel Foundries, and called his attention to the instance of an employee of the company's having lost his position for similar conduct. It also appears that after appellee

filed his application here in issue he was discharged from the
employment of the company.

It will be observed that in November, when appellee entered
the field, appellant was not only inactive, but was deliberately
delaying the preparation and filing of his application. In
September, he had instructed his attorney not to prepare his
application, but to await instructions from him, notwithstand-
ing the attorney states he clearly understood the invention from
appellant's explanation and the drawings furnished him, made
in the previous January. It must be remembered that neither
party had reduced this invention to practice prior to filing his
application. Appellant's lack of diligence before and at the
time appellee entered the field could not be cured by activity
subsequent to that date, since he was the last to reach the Patent
Office. Being the junior party, his inactivity at a time when
diligence was essential to overcome the claims of his rival bars
his right of recovery. As this court said in *Seeberger* v. *Dodge*,
24 App. D. C. 476, since Seeberger was the first to conceive, but
the last to reduce to practice, the burden is imposed upon him
to show that immediately before Dodge entered the field, and
upon that date, he was exercising due diligence in perfecting
his invention and attempting to reduce it to actual practice.

Considering the whole case, the inactivity of appellant after
practically completing his drawings in January, 1906, his lack
of diligence at the time appellee is conceded to have entered
the field, and his conduct thereafter, the Commissioner of Pat-
ents was justified in awarding priority of invention to appellee,
the senior party to the interference.

The decision of the Commissioner of Patents is affirmed, and
the clerk is directed to certify these proceedings as by law re-
quired.                                              *Affirmed.*